AUDET & PARTNERS, LLP
WILLIAM M. AUDET (SBN 117456)
LING Y. KUANG (SBN 296873)
KURT D. KESSLER (SBN 327334)
711 Van Ness Ave., Suite 500
San Francisco, CA 94102-3275
Tel: 415/568-2555
415/568-2556 (fax)
waudet@audetlaw.com
lkuang@audetlaw.com
kkessler@audetlaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL KEITER AND HANNAH OWENS, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| v. | DEMAND FOR JURY TRIAL |
| JUMPSTART GAMES, INC., | |
| Defendant. | |

**INTRODUCTION**

1. Representative Plaintiffs Rachel Keiter and Hannah Owens (together, "Representative Plaintiffs") bring this class action against Defendant JumpStart Games, Inc. ("Defendant" or "JumpStart") for its failure to properly secure and safeguard Representative Plaintiffs' and Class Members' personally identifiable information stored within Defendant's information network, including, without limitation, names, email addresses, usernames, dates of birth, genders, IP addresses, Neopets PINs, hashed passwords, data about a player's pet, game play, and other information provided to Neopets (these types of information, *inter alia*, being thereafter referred to as "personally identifiable information" or "PII").[1]

2. With this action, Representative Plaintiffs seek to hold Defendant responsible for the harms it caused and will continue to cause Representative Plaintiffs and at least 69 million other similarly situated persons in the massive and preventable cyberattack purportedly occurring from January 3, 2021, to July 19, 2022[2], by which cybercriminals infiltrated Defendant's inadequately protected network servers and accessed highly sensitive PII belonging to both adults and children, which was being kept unprotected (the "Data Breach").

3. Defendant acquired, collected, and stored Representative Plaintiffs' and Class Members' PII. Therefore, at all relevant times, Defendant knew or should have known, that Representative Plaintiffs and Class Members would use Defendant's system to store and/or share sensitive data, including highly

---

[1] Personally identifiable information ("PII") generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not on their face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers).

[2] Toulas, Billy. "Neopets says hackers had access to its systems for 18 months" Bleeping Computer. https://www.bleepingcomputer.com/news/security/neopets-says-hackers-had-access-to-its-systems-for-18-months/ (last accessed February 28, 2023).

confidential PII. Defendant notified Representative Plaintiffs of the Data Breach on or around August 29, 2022.

4.    By obtaining, collecting, using, and deriving a benefit from Representative Plaintiffs' and Class Members' PII, Defendant assumed legal and equitable duties to those individuals. These duties arise from state and federal statutes and regulations, as well as common law principles.

5.    Defendant disregarded the rights of Representative Plaintiffs and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Representative Plaintiffs' and Class Members' PII was safeguarded, failing to take available steps to prevent unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the PII of Representative Plaintiffs and Class Members was compromised through disclosure to an unknown and unauthorized third parties—undoubtedly nefarious third parties that seeks to profit off this disclosure by defrauding Representative Plaintiffs and Class Members. Representative Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they are entitled to injunctive and other equitable relief.

## JURISDICTION AND VENUE

6.    Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity jurisdiction). Specifically, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one other Class Member is a citizen of a state different from Defendant.

7.    Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. §1367.

8.     Defendant is headquartered in and routinely conducts business in the State where this district is located, has sufficient minimum contacts in this State, and has intentionally availed itself of this jurisdiction by marketing and selling products and services and by accepting and processing payments for those products and/or services within this State.

9.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Representative Plaintiffs' claims took place within this District, and Defendant is headquartered in this Judicial District.

### PLAINTIFF

10.     Plaintiff Rachel Keiter is an adult individual and, at all relevant times herein, a resident and citizen of North Carolina. She is a victim of the Data Breach.

11.     Plaintiff Hannah Owens is an adult individual and, at all relevant times herein, a resident and citizen of Ohio. She is a victim of the Data Breach.

12.     Defendant received highly sensitive personal information from Representative Plaintiffs in connection with Defendant's Neopets game. As a result, Representative Plaintiffs' information was among the data accessed by an unauthorized third-party in the Data Breach.

13.     Representative Plaintiffs received—and were each a "consumer" for purposes of obtaining goods/services from Defendant.

14.     At all times herein relevant, Representative Plaintiffs are and were members of the Class.

15.     As required to play Neopets, Representative Plaintiffs provided Defendant with highly sensitive personal information.

16.     Representative Plaintiffs' PII was exposed in the Data Breach because Defendant stored and/or shared Representative Plaintiffs' PII. This PII was within the possession and control of Defendant at the time of the Data Breach.

17.    Representative Plaintiffs became aware of the breach when Defendant, on or around August 29, 2022, posted on the internet that Neopets customers' PII was involved in the Data Breach (the "Notice").

18.    Plaintiff Owens first saw the Notice when it was posted on Reddit.

19.    Plaintiff Keiter saw the Notice when she received an email from Defendants regarding the Notice.

20.    As a result, Representative Plaintiffs spent time dealing with the consequences of the Data Breach, which included and continues to include time spent verifying the legitimacy and impact of the Data Breach, exploring credit monitoring and identity theft insurance options, self- monitoring accounts and seeking legal counsel regarding her options for remedying and/or mitigating the effects of the Data Breach. This time has been lost forever and cannot be recaptured.

21.    Representative Plaintiffs suffered actual injury in the form of damages to and diminution in the value of their PII—a form of intangible property that they entrusted to Defendant, which was compromised in and as a result of the Data Breach.

22.    Representative Plaintiffs suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and have anxiety and increased concerns for the loss of privacy, as well as anxiety over the impact of cybercriminals accessing, using, and selling their PII.

23.    Representative Plaintiffs have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their PII being placed in the hands of unauthorized third parties/criminals.

24.    Representative Plaintiffs have a continuing interest in ensuring that their PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

25.     As a direct and proximate result of Defendant's wrongful actions or omissions here, resulting in the Data Breach and the unauthorized release and disclosure of Representative Plaintiffs' and other Class Members' PII, Representative Plaintiffs and all Class Members have suffered, and will continue to suffer, ascertainable losses, economic damages, and other actual injury and harm, including, inter alia, (i) the resulting increased and imminent risk of future ascertainable losses, economic damages and other actual injury and harm, (ii) the opportunity cost and value of lost time they must spend to monitor their financial accounts and other accounts—for which they are entitled to compensation; and (iii) emotional distress as a result of having their PII accessed and exfiltrated in the Data Breach.

## DEFENDANT

26.     Defendant is a Delaware corporation with a principal place of business located at 830 S. Pacific Coast Highway, Suite 208 El Segundo, California 90245.

27.     Defendant produces and runs games primarily designed for children that "are uniquely designed by early education experts to help your child to learn, grow, and have fun."[3] Among the games it produces is Neopets, a "Virtual Pet Game" in which users care for digital pets by feeding them, caring for them when they are ill, etc.[4] Originally launched in 1999, over 150 million individuals have played Neopets.[5]

28.     The true names and capacities of persons or entities, whether individual, corporate, associate or otherwise, who may be responsible for some of

---

[3] "Jumpstart Academy" https://www.jumpstart.com/?c=np (last accessed, February 28, 2023).
[4] "Neopets" https://www.jumpstart.com/neopets/  (last accessed February 28, 2023).
[5] "A Reimagined Neopian World To Explore: Announcing the Neopets Metaverse Alpha Release" Investing News Network. https://investingnews.com/a-reimagined-neopian-world-to-explore-announcing-the-neopets-metaverse-alpha-release/#:~:text=A%20Reimagined%20Neopian%20World%20To%20Explore%3A%20Announcing%20the,launch%20of%20its%20Alpha%20version%20on%20August%2026th (last accessed February 28, 2023).

1   the claims alleged here are currently unknown to Representative Plaintiffs.

2   Representative Plaintiffs will seek leave of court to amend this Complaint to reflect

3   the true names and capacities of such responsible parties when their identities

4   become known.

5                    **CLASS ACTION ALLEGATIONS**

6          29.    Representative Plaintiffs bring this action pursuant to the provisions of

7   Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of

8   themselves and the following class (the "Class"):

9   **Nationwide Class:**

10          All individuals within the United States of America whose PII was exposed to

11          unauthorized third parties in the data breach discovered on or around July 20,

12          2022.

13          30.    Excluded from the Class are the following individuals and/or entities:

14   Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors,

15   and any entity in which Defendant has a controlling interest; all individuals who

16   make a timely election to be excluded from this proceeding using the correct

17   protocol for opting out; any and all federal, state or local governments, including but

18   not limited to any departments, agencies, divisions, bureaus, boards, sections,

19   groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of

20   this litigation, as well as their immediate family members.

21          31.    Also, in the alternative, Representative Plaintiffs request Subclasses as

22   necessary based on the types of PII that were compromised in the data breach

23   discovered by Defendant on or around July 20, 2022.

24          32.    Representative Plaintiffs reserve the right to amend the above

25   definitions or to propose subclasses in subsequent pleadings and motions for class

26   certification.

27          33.    This action has been brought and may properly be maintained as a class

28   action under Federal Rule of Civil Procedure Rule 23 because there is a well-

defined community of interest in the litigation and membership in the proposed class is easily ascertainable.

    a.  Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Class are so numerous that joinder of all members is impractical, if not impossible. Based on Defendant's notice of the Data Breach, the total number of Class Members is in the tens of millions of individuals. Membership in the Class will be able to be determined with the assistance of Defendant's records.

    b.  Commonality: Representative Plaintiffs and the Class Members share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not limited to:

        1)  Whether Defendant had a legal duty to Representative Plaintiffs and the Class to exercise due care in collecting, storing, using, and/or safeguarding their PII;

        2)  Whether Defendant knew or should have known of the susceptibility of its data security systems to a data breach;

        3)  Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

        4)  Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

        5)  Whether Defendant failed to comply with its own policies as well as applicable laws, regulations, and industry standards relating to data security;

6)      Whether Defendant adequately, promptly, and accurately informed Representative Plaintiffs and Class Members that their PII had been compromised;

7)      How and when Defendant actually learned of the Data Breach;

8)      Whether Defendant promptly addressed the Data Breach following their learning of the Data Breach;

9)      Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PII of Representative Plaintiffs and Class Members;

10)     Whether Defendant has adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

11)     Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Representative Plaintiffs and Class Members;

12)     Whether Representative Plaintiffs and Class Members are entitled to actual damages and/or whether injunctive, corrective, and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendant's wrongful conduct;

13)     Whether Representative Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

c.  Typicality: Representative Plaintiffs' claims are typical of the claims of the Plaintiff Class. Representative Plaintiffs and all members of the Plaintiff Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

d. Adequacy of Representation: Representative Plaintiffs in this class action is an adequate representative of each of the Plaintiff Class in that Representative Plaintiffs has the same interest in the litigation of this case as the Class Members, is committed to the vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature. Representative Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to other Class Members or the Class in their entirety. Representative Plaintiffs anticipate no management difficulties in this litigation.

e. Superiority of Class Action: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes or may make it impractical for members of the Plaintiff Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Plaintiff Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests.

34. This class action is also appropriate for certification under Rule 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety. Defendant's policies and practices challenged herein apply to and affect Class

00198937                                                                 Case No.

Members uniformly, and Representative Plaintiffs' challenge of these policies and practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to the Representative Plaintiffs.

35.     Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure and protect the PII of Class Members, and Defendant may continue to act unlawfully as set forth in this Complaint.

36.     Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## COMMON FACTUAL ALLEGATIONS

### The Cyberattack

37.     In the course of the Data Breach, one or more unauthorized third parties accessed Class Members' sensitive data including, but not limited to, names, email addresses, usernames, dates of birth, genders, IP addresses, Neopets PINs, hashed passwords, data about a player's pet, game play, and other information provided to Neopets. Representative Plaintiffs were among the individuals whose data was accessed in the Data Breach.

38.     According to Defendant, the Data Breach lasted for more than 18 months, with the cybercriminals having full access to Plaintiffs' and Class Members' II during this time and without detection from Defendant. Defendant learned of the Data Breach only after the cybercriminals offered to sell the PII on the dark web.

### Defendant's Failed Response to the Breach

39.     Upon information and belief, the third-party cybercriminals gained unauthorized access to Representative Plaintiffs' and Class Members' PII within Defendant's system, with the intent of engaging in the misuse of the PII, including

00198937

Case No.

marketing and selling Representative Plaintiffs' and Class Members' PII on the internet to bad actors.

40. Defendant claimed that they had learned of the Data Breach on July 20, 2022, and had taken steps to respond.

41. Upon information and belief, the unauthorized third-party cybercriminals gained access to Representative Plaintiffs' and Class Members' PII with the intent of engaging in the misuse of the PII, including marketing and selling Representative Plaintiffs' and Class Members' PII.

42. Defendant had and continues to have obligations created by applicable federal and state law as set forth herein, reasonable industry standards, common law, and its own assurances and representations to keep Representative Plaintiffs' and Class Members' PII confidential and to protect such PII from unauthorized access.

43. Representative Plaintiffs and Class Members were required to provide their PII to Defendant in order to play Neopets. Defendant created, collected, and stored Representative Plaintiffs' and Class Members' PII with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

44. Despite this, Representative Plaintiffs and the Class Members remain, even today, in the dark regarding what particular data was stolen, the particular method used by the cybercriminals to access Defendant's networks, and what steps are being taken, if any, to secure Plaintiffs' and Class Members' PII going forward. Representative Plaintiffs and Class Members are, thus, left to speculate as to where their PII ended up, who has used it, and for what potentially nefarious purposes. Indeed, they are left to further speculate as to the full impact of the Data Breach and how exactly Defendant intends to enhance its information security systems and monitoring capabilities so as to prevent further breaches.

45.     Representative Plaintiffs' and Class Members' PII may end up for sale on the dark web or simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Representative Plaintiffs and/or Class Members. Either way, unauthorized individuals can now easily access the PII of Representative Plaintiffs and Class Members. The stolen PII can also be used to deploy targeted phishing attacks on Plaintiffs and the Class Members to obtain additional sensitive personal and financial information.

**Defendant Collected/Stored Class Members' PII**

46.     Defendant acquired, collected, stored, and assured reasonable security over Representative Plaintiffs' and Class Members' PII.

47.     As a condition of its relationships with Representative Plaintiffs and Class Members, Defendant required that Representative Plaintiffs and Class Members entrust Defendant with highly sensitive and confidential PII. Defendant, in turn, stored that information on Defendant's system that was ultimately affected by the Data Breach.

48.     This is governed by Defendant's Privacy Policy, found on their website at https://www.neopets.com/privacy.phtml. This policy states the following regarding "SECURITY, STORAGE AND RETENTION OF INFORMATION."

> The Sites maintain reasonable technical and organizational steps to help ensure that information collected is secure, including limiting the number of people who have physical access to our database servers and use of electronic security systems and password protections which guard against unauthorized access. The Sites conduct financial transactions via secured transmissions. We limit access to user's information to employees and contractors who are authorized for the proper handling of such information, and any employee found violating our standards of security and confidentiality will be subject to our disciplinary processes. We also take reasonable steps to help make sure our third-party agents protect the security of your personal information. However, as with most Internet sites or services, it is possible that third parties may unlawfully access such personal information through a number of means despite our efforts. Information collected at the Sites will not be stored for longer than is necessary for the purposes described in this Privacy Policy, or to otherwise meet legal requirements.

Case No.

00198937

49.     By obtaining, collecting, and storing Representative Plaintiffs' and Class Members' PII, Defendant assumed legal and equitable duties and knew, or should have known, that they were thereafter responsible for protecting Representative Plaintiffs' and Class Members' PII from unauthorized disclosure.

50.     Representative Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII. Representative Plaintiffs and Class Members relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

51.     Defendant could have prevented the Data Breach, which began as early as January 3, 2021, by properly securing and encrypting and/or more securely encrypting its servers generally, as well as Representative Plaintiffs' and Class Members' PII. Defendant also allowed the Data Breach to continue for more than 18 months without detection.

52.     Defendant's negligence in safeguarding Representative Plaintiffs' and Class Members' PII is exacerbated by repeated warnings and alerts directed at protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

53.     Due to the high-profile nature of recent breaches of this kind, Defendant was and/or certainly should have been on notice and aware of such attacks occurring and, therefore, should have assumed and adequately performed the duty of preparing for such an imminent attack. This is especially true given that Defendant is a large, sophisticated operation with the resources to put adequate data security protocols in place.

54.     Yet, despite the prevalence of public announcements of data breaches and data security compromises, Defendant failed to take appropriate steps to protect Representative Plaintiffs' and Class Members' PII from being compromised.

**Value of the Relevant Sensitive Information**

55.    The high value of PII to criminals is further evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[6] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[7] Criminals can also purchase access to entire company data breaches from $999 to $4,995.[8]

56.    These criminal activities have and will result in devastating financial and personal losses to Representative Plaintiffs and Class Members. For example, it is believed that certain PII compromised in the 2017 Experian data breach was being used, many years later, by identity thieves to apply for COVID-19-related benefits in the state of Oklahoma. Such fraud will be an omnipresent threat for Representative Plaintiffs and Class Members for the rest of their lives. They will need to remain constantly vigilant against the advances of identity theft and bad actors.

57.    This breach is particularly troubling given the target demographic for Neopets: children. Because of the Data Breach, the personal information of millions of children is in the hands of cybercriminals, all but assuring at least some of it will end up in the hands of sinister actors with unwholesome intentions.

58.    Moreover, victims of this breach face the more banal but no less devastating risk of identity theft. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without

---

[6] "Your Personal Data Is For Sale On The Dark Web. Here's How Much It Costs" Digital Trends. https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed February 28, 2023).

[7] "Here's How Much Your Personal Information Is Selling for on the Dark Web" Experian https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed February 28, 2023).

[8] "In the Dark", VPNOverview, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed February 28, 2023).

authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

59.     Identity thieves can use PII, such as that of Representative Plaintiffs and Class Members, which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud, such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

60.     The ramifications of Defendant's failure to keep secure Representative Plaintiffs' and Class Members' PII are long lasting and severe. Once PII is stolen, particularly identification numbers, fraudulent use of that information and damage to victims may continue for years. Indeed, the PII and/or financial information of Representative Plaintiffs and Class Members was taken by hackers to engage in identity theft or to sell it to other criminals who will purchase the PII and/or financial information for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

61.     There may be a time lag between when harm occurs versus when it is discovered and also between when PII and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches: up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result,

studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[9]

62.     The harm to Representative Plaintiffs and Class Members is especially acute, given the nature of the leaked data.

63.     When cyber criminals access personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendant may have exposed Representative Plaintiffs and Class Members.

64.     And data breaches are preventable.[10] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[11] she added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[12]

65.     Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[13]

66.     Here, Defendant knew of the importance of safeguarding PII and of the foreseeable consequences that would occur if Representative Plaintiffs' and Class Members' PII was stolen, including the significant costs that would be placed on Representative Plaintiffs and Class Members as a result of a breach of this

---

[9] *Report to Congressional Requesters*, GAO, at 29 (June 2007), http://www.gao.gov/new.items/d07737.pdf (last accessed February 28, 2023).
[10] Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012)
[11] *Id.* at 17.
[12] *Id.* at 28.
[13] *Id.*

00198937

CLASS ACTION COMPLAINT

Case No.

magnitude. As detailed above, Defendant is a large, sophisticated organization with the resources to deploy robust cybersecurity protocols. They knew, or should have known, that the development and use of such protocols were necessary to fulfill its statutory and common law duties to Representative Plaintiffs and Class Members. Therefore, its failure to do so is intentional, willful, reckless, and/or grossly negligent.

67.     Defendant disregarded the rights of Representative Plaintiffs and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Representative Plaintiffs' and Class Members' PII; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Representative Plaintiffs and Class Members prompt and accurate notice of the Data Breach.

**Notice of the Breach**

68.     On August 29, 2022, Defendant provided notice of the Data Breach, posting on its website[14] and releasing notice via PRNewswire.[15]

69.     The notice explained that "On July 20, 2022, Neopets was alerted to activity indicating unauthorized access by a third party to our IT systems. We took immediate steps to shut down further access to the affected systems and we have not seen any unauthorized activity since that time. We also launched an investigation assisted by a leading forensics firm and engaged with law enforcement.  On August

---

[14]"Re: Notice of Data Breach", Neopets.
https://www.neopets.com/account/breachnotice20220829.phtml
[15] "Neopets Provides Notice of Data Breach", PR Newswire.  https://www.prnewswire.com/news-releases/neopets-provides-notice-of-data-breach-301613578.html

10, 2022, Neopets determined that the event resulted in unauthorized access to, and in some cases, download of, player personal information."[16]

70.     Defendant stated that "[a]fter our investigation, we have determined that for past and present Neopets players, affected information may include the data provided when registering for or playing Neopets, including name, email address, username, date of birth, gender, IP address, Neopets PIN, hashed password, as well as data about a player's pet, game play, and other information provided to Neopets.  For players that played prior to 2015, the information also could have included non-hashed, but inactive, passwords. This information appears to have been accessed and potentially downloaded between January 3-February 5, 2021, or July 16-19, 2022."[17]

71.     Defendant then claimed that "Neopets is committed to safeguarding our players' personal information. As part of our ongoing commitment to the safety and privacy of the Neopets' player information in our care, we have reset players' passwords and are working on adding multi-factor authentication to better safeguard your account access.  We have also enhanced the protection of our systems, including by further strengthening our network monitoring, authentication, and system protection."[18]

72.     Representative Plaintiffs were not aware of the Data Breach—or even that Defendant was still in possession of their data until receiving notice of the data breach.

## FIRST CLAIM FOR RELIEF

### Negligence

---

[16] "Re: Notice of Data Breach", Neopets.
https://www.neopets.com/account/breachnotice20220829.phtml
[17] *Id.*
[18] *Id.*

Case No.

00198937

73.    Representative Plaintiffs re-allege and incorporates by reference all proceeding paragraphs as if fully set forth herein.

74.    At all times herein relevant, Defendant owed Representative Plaintiffs and Class Members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard the PII provided to them and to use continuously use commercially reasonable methods to do so. Defendant took on this obligation upon accepting and storing the PII of Representative Plaintiffs and Class Members in its computer systems and on its networks that it required in order to use their services

75.    Among these duties, Defendant was expected:

   a.  to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in its possession;

   b.  to continuously protect Representative Plaintiffs' and Class Members' PII using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

   c.  to implement processes to quickly detect any data breaches and to timely act on warnings about data breaches; and

   d.  to promptly notify Representative Plaintiffs and Class Members of any data breach, security incident, or intrusion that affected or may have affected their PII.

76.    Defendant knew that the PII was private and confidential and should be protected as private and confidential and, thus, Defendant owed a duty of care not to subject Representative Plaintiffs and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

77.    Defendant knew, or should have known, of the risks inherent in collecting and storing PII that are necessary to address, the vulnerabilities of its data security systems to data breaches, and the importance of adequate security to

Case No.

00198937

prevent data breaches. Defendant knew about numerous, well-publicized data breaches and should have known that it would be a target for similar actors as well.

78.     Defendant knew, or should have known, that its data systems and networks did not adequately safeguard Representative Plaintiffs' and Class Members' PII from the possibility of data breaches.

79.     Only Defendant was in the position to ensure that its systems and protocols were sufficient to protect the PII from data breaches that Representative Plaintiffs and Class Members had entrusted to it.

80.     Defendant breached its duties to Representative Plaintiffs and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the PII of Representative Plaintiffs and Class Members, leading to the Data Breach.

81.     Because Defendant knew that a breach of its systems could damage millions of individuals, including Representative Plaintiffs and Class Members, Defendant had a duty to adequately protect its data systems and the PII contained therein, and failed in that duty.

82.     Representative Plaintiffs' and Class Members' willingness to entrust Defendant with their PII was predicated on the understanding that Defendant would take adequate security precautions to protect the PII. Moreover, only Defendant had the ability to protect its own systems and the PII it stored on them from attack and subsequent data breach. Thus, Defendant had a special relationship with Representative Plaintiffs and Class Members regarding the security of their PII.

83.     Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Representative Plaintiffs' and Class Members' PII and to promptly notify them about any data breaches, including the Data Breach. These "independent duties" are untethered to any contract between Defendant and Representative Plaintiffs and/or the remaining Class Members.

84. Defendant breached its general duty of care to Representative Plaintiffs and Class Members in, but not necessarily limited to, the following ways:

   a. by failing to timely and accurately disclose that Representative Plaintiffs' and Class Members' PII had been improperly acquired or accessed;

   b. by failing to adequately train its employees to not store PII longer than absolutely necessary;

   c. by failing to adequately protect and safeguard the PII by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII;

   d. by failing to provide adequate supervision and oversight of the PII with which they were and are entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PII of Representative Plaintiffs and Class Members, misuse the PII and intentionally disclose it to others without consent;

   e. by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the PII of Representative Plaintiffs and Class Members;

   f. by failing to encrypt Representative Plaintiffs' and Class Members' PII and monitor user behavior and activity in order to identify possible threats.

   g. by failing to consistently enforce security policies aimed at protecting Representative Plaintiffs' and Class Members' PII; and

   h. by failing to implement processes to quickly detect data breaches, security incidents, or intrusions;

00198937

85.     Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats to the PII of Representative Plaintiffs and Class Members.

86.     As a proximate and foreseeable result of Defendant's grossly negligent conduct, Representative Plaintiffs and Class Members have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

87.     Defendant's actions (or lack thereof) directly led to the Data Breach and thus the damages to Representative Plaintiffs and Class Members. There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Representative Plaintiffs and Class Members and the harm suffered, or risk of imminent harm suffered by Representative Plaintiffs and Class Members. Representative Plaintiffs' and Class Members' PII was accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures, as was required of them.

88.     Further, through its failure to provide timely and clear notification of the Data Breach to Representative Plaintiffs and Class Members, Defendant prevented Representative Plaintiffs and Class Members from taking meaningful, proactive steps to secure their PII.

89.     Additionally, the law further imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of the PII to Representative Plaintiffs and Class Members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences and thwart future misuse of their PII.

90.     Defendant breached its duty to notify Representative Plaintiffs and Class Members of the unauthorized access by not detecting the Data Breach for more than 18 months and then waiting more than a month after learning of the Data Breach to notify Representative Plaintiffs and Class Members and then by failing

and continuing to fail to provide Representative Plaintiffs and Class Members sufficient information regarding the extent and breadth of the Data Breach. To date, Defendant has not provided sufficient information to Representative Plaintiffs and Class Members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Representative Plaintiffs and Class Members.

91.    Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

92.    The damages Representative Plaintiffs and Class Members have suffered (as alleged above) and will continue to suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

93.    Additionally, 15 U.S.C. §45 (FTC Act, Section 5) prohibits "unfair . . . practices in or affecting commerce," including, as interpreted, and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

94.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Representative Plaintiffs and Class Members.

95.    Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se.*

96.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Representative Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to know how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention,

detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with time and effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to, efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft; (vi) the continued risk to their PII, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Representative Plaintiffs' and Class Members' PII in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Representative Plaintiffs and Class Members.

97.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Representative Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

98.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Representative Plaintiffs and Class Members have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendant's possession and are subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

## SECOND CLAIM FOR RELIEF

## Breach of Implied Contract

99.    Representative Plaintiffs re-allege and incorporates by reference all proceeding paragraphs as if fully set forth herein.

00198937

Case No.

100.   Representative Plaintiffs and Class Members entrusted their PII to Defendant. In so doing, Representative Plaintiffs and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been breached and compromised or stolen.

101.   In its Privacy Policy, Defendant represented that it implemented security measures to protect is customers' PII.

102.   Representative Plaintiffs and the Class fully performed their obligations under the implied contracts with Defendant.

103.   Defendant breached the implied contracts they made with Representative Plaintiffs and Class Members by failing to safeguard and protect their personal information.

104.   As a direct and proximate result of Defendant's above-described breach of implied contract, Representative Plaintiffs and Class Members have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

105.   As a direct and proximate result of Defendant's above-described breach of implied contract, Representative Plaintiffs and Class Members are entitled to recover actual, consequential, and nominal damages.

### THIRD CLAIM FOR RELIEF

00198937
CLASS ACTION COMPLAINT

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

106.   Representative Plaintiffs re-allege and incorporates by reference all proceeding paragraphs as if fully set forth herein.

107.   Every contract, even those that are implied, has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a the actual and/or express terms of a contract

108.   Representative Plaintiffs and Class Members have complied with and performed all conditions of their contracts with Defendant, including by providing Defendant with their PII.

109.   Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard PII, failing to timely and accurately disclose the Data Breach to Representative Plaintiffs and Class Members and continued acceptance of PII and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

110.   Defendant acted in bad faith and/or with malicious motive in denying Representative Plaintiffs and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

## RELIEF SOUGHT

**WHEREFORE,** Representative Plaintiffs, on behalf of themselves and each member of the proposed National Class, respectfully request that the Court enter judgment in her favor and for the following specific relief against Defendant as follows:

1. That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed Class and/or any other appropriate subclasses

Case No.

00198937

under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including appointment of Representative Plaintiffs' counsel as Class Counsel;

2. For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

3. That the Court enjoin Defendant, ordering it to cease and desist from unlawful activities;

4. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Representative Plaintiffs' and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Representative Plaintiffs and Class Members;

5. For injunctive relief requested by Representative Plaintiffs, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Representative Plaintiffs and Class Members, including but not limited to an Order:

   a. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

   b. requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

   c. requiring Defendant to delete and purge the PII of Representative Plaintiffs and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Representative Plaintiffs and Class Members;

d.  requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Representative Plaintiffs' and Class Members' PII;

e.  requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

f.  prohibiting Defendant from maintaining Representative Plaintiffs' and Class Members' PII on a cloud-based database;

g.  requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

h.  requiring Defendant to conduct regular database scanning and securing checks;

i.  requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII, as well as protecting the PII of Representative Plaintiffs and Class Members;

j.  requiring Defendant to implement a system of tests to assess its employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting PII;

k.  requiring Defendant to implement, maintain, review, and revise as necessary a threat management program to appropriately monitor

CLASS ACTION COMPLAINT

Case No.

00198937

1         Defendant's networks for internal and external threats, and assess

2         whether monitoring tools are properly configured, tested, and updated;

3    l.   requiring Defendant to meaningfully educate all Class Members about

4         the threats that they face as a result of the loss of their confidential PII

5         to third parties, as well as the steps affected individuals must take to

6         protect themselves.

7   6.  For prejudgment interest on all amounts awarded, at the prevailing legal rate;

8   7.  For an award of attorneys' fees, costs, and litigation expenses, as allowed by

9     law;

10   8.  For all other Orders, findings, and determinations identified and sought in this

11                     **JURY DEMAND**

12     Representative Plaintiffs, individually and on behalf of the Plaintiff Class,

13 hereby demand a trial by jury for all issues triable by jury.

14                    Respectfully submitted,

15

16                    By:

   Dated: March 1, 2023

17                         *s/ William M. Audet*

18                      WILLIAM M. AUDET

19                AUDET & PARTNERS, LLP
                 WILLIAM M. AUDET (117456)

20                LING Y. KUANG (296873)
                 KURT D. KESSLER (327334)

21                711 Van Ness Ave., Suite 500
                 San Francisco, CA 94102

22                Tel: 415/568-2555
                 415/568-2556 (fax)

23                waudet@audetlaw.com
                 lkuang@audetlaw.com

24                kkessler@audetlaw.com

25                POMERANTZ LLP
                 JORDAN L. LURIE (SBN 130013)

26                ARI Y. BASSER (SBN 272618)
                 1100 Glendon Ave., 15th Floor

27                Los Angeles, CA 90024
                 Tel: 310/405-7190

28                jllurie@pomlaw.com
                 abasser@pomlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (SBN 149343)
PAULA R. BROWN (SBN 254142)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
pbrown@bholaw.com

Case No.

CLASS ACTION COMPLAINT

00198937